UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | No. 07 CR 707 |
| ) | |
| RODNEY TANNER,   ) | Judge Ronald A. Guzman |
|    a/k/a "T-Mac,"   ) | |
| KEITH CALVERT, and   ) | |
| FRED CALVERT   ) | |

## GOVERNMENT'S MOTION IN LIMINE
## TO PRECLUDE AN ENTRAPMENT DEFENSE

The UNITED STATES OF AMERICA respectfully moves the Court, *in limine*, to exclude an entrapment defense absent defendants filing a sufficient pre-trial evidentiary proffer of facts to support such a defense. Alternatively, if this Court is inclined to allow defendants to argue that they were entrapped, the government asks the Court to allow the admission of defendants' convictions that are relevant to the issue of whether they have a predisposition to commit the crimes charged in the indictment.

I. **The Court Should Require Defendants To Present A Pre-Trial Proffer Of Any Evidence They Intend To Introduce In Support Of An Entrapment Defense**

The government anticipates that one or more of the defendants may raise an entrapment defense at trial. Given the overwhelming evidence that shows that defendants were not entrapped, and so that the Court can determine whether his presentation of the defense to the jury would be proper, the government asks the Court to require the defendants to present a pre-trial proffer of evidence that they would introduce that would support an entrapment defense. As the Seventh Circuit has explained, "there exists substantial legal authority" in support of a court requiring a defendant to make a sufficient proffer of entrapment evidence before presenting such a defense to the jury. *United States v. Blassingame*, 197 F.3d 271, 280 (7th Cir. 1999).

The affirmative defense of entrapment requires proof by a defendant of two elements: "'[1] government inducement of the crime, and [2] a lack of predisposition on the part of the defendant to engage in criminal conduct.'" *Blassingame*, 197 F.3d at 279-280 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1998)); *accord United States v. Santiago-Godinez*, 12 F.3d 722, 728 (7th Cir. 1993). A defendant's burden is to establish more than a scintilla of evidence, although the evidence need not be so substantial that, if uncontroverted, it supports a finding of entrapment as a matter of law. *Blassingame*, 197 F.3d at 280. If a defendant adequately establishes both elements of entrapment, the burden shifts to the government, which can rebut the entrapment defense by proving beyond a reasonable doubt either the absence of government inducement *or* the defendant's predisposition to commit the offense. *Id.*

Presumably, the defendants intend to introduce evidence or elicit testimony during trial that suggests they were not predisposed to commit the crime prior to their communications with the cooperating informant ("CI") or undercover federal agent ("UC") in this case. Such evidence or testimony should not be admissible absent a pre-trial evidentiary proffer that meets the defendants' burden to establish entrapment.

As an initial matter, it is settled law in this circuit that "[m]otions *in limine* are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002); *see also Blassingame*, 197 F.3d at 279. Further, as the Supreme Court has held,

> The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility. On the contrary, it is a testament to the importance of trial by jury and the need

> to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses. If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.

*United States v. Bailey*, 444 U.S. 394, 416 (1980). This is exactly the case here, where it appears that defendants will not be able to meet his burden of production with respect to the predisposition element of the entrapment defense. There is no need to burden and confuse the jury with testimony related to the other elements of the defense. Accordingly, the Court should require a pre-trial proffer of such evidence.

**II.    The Defendants Will Be Unable To Make A *Prima Facie* Showing That They Lacked The Predisposition To Commit the Crimes Charged.**

This Court should exclude any argument or evidence concerning entrapment because such a defense is not available as a matter of law, given the facts of this case. Absence of predisposition is the principal element of the defendants' initial burden of the entrapment defense. *Blassingame*, 197 F.3d at 280. The predisposition inquiry "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to commit the crime." *Id.* at 280-81 (quoting *Mathews*, 485 U.S. at 63). The facts show here that the defendants fall into the category of an unwary criminal.

A predisposed person is one "who takes advantage of an ordinary opportunity to commit criminal acts – not an extraordinary opportunity, the sort of thing that might entice an otherwise law-abiding person . . . ." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir. 1991). In determining whether a defendant was (or was not) predisposed to commit a crime, the following factors are relevant: (1) the defendant's character or reputation, including prior criminal history; (2) whether law

enforcement officers initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether defendant showed a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government. *United States v. Higham*, 98 F.3d 285, 291 (7th Cir. 1996). These entrapment factors show that defendants cannot, as a matter of law, make a *prima facie* showing of lack of predisposition.

        A.    **The Defendants' Character and Reputation Show They Have a Predisposition to Commit the Crimes Charged.**

Each of the defendants has an extensive criminal history of drug convictions, weapons offenses, and/or violent felony convictions, which demonstrate that they had a predisposition to use weapons and commit the charged violent drug conspiracy.

        1.    <u>Rodney Tanner</u>

Defendant Rodney Tanner has a number of felony convictions, including: (1) a 1996 conviction for illegal possession of a weapon by a felon, for which he was sentenced to 4 years' imprisonment; (2) a 1999 conviction for possession of more than 15 grams of heroin, for which he was sentenced to 86 days' imprisonment, and (3) a 2002 conviction for manufacture/delivery of cocaine, for which he was sentenced to 4 years' imprisonment and 5 years' extended supervision. There was an outstanding warrant for Tanner on this last charge at the time he was arrested by federal agents in this case.

In addition, Tanner stated during a recorded meeting with the undercover agent on October 16, 2007, that he had another "lick" coming up in a few days in which he was going to rob a drug dealer of marijuana. Tanner went on to state he frequently robs drug dealers of marijuana,

although never in the Waukegan/North Chicago area.

    2.    <u>Keith Calvert</u>

Defendant Keith Calvert has several felony convictions as well, including: (1) a 1997 conviction for possession of a controlled substance, for which he was sentenced to 2 years' imprisonment; (2) a 1997 conviction for armed robbery, for which he was sentenced to 5 years' imprisonment; and (3) a 2000 conviction for delivery of cocaine, for which he was sentenced to 6 years and 6 months' imprisonment.

    3.    <u>Fred Calvert</u>

Defendant Fred Calvert has a number of felony convictions, including: (1) a 1993 conviction for unlawful use of a weapon, for which he was sentenced to 4 years' imprisonment; (2) a 1995 conviction for possession of a controlled substance, for which he was sentenced to 18 months' imprisonment; and (3) a 1996 conviction for manufacture/delivery of a controlled substance, for which he was sentenced to 6 years' imprisonment.

    **B.**    **Defendants Actively Participated in Planning the Home Invasion**

In several recorded meetings with undercover agents defendant Tanner actively participated in discussions about how to carry out the armed robbery of the suspected drug stash house. Tanner also recruited other participants to help with the armed robbery, including co-defendants Keith Calvert and Fred Calvert. After Tanner brought Keith Calvert and Fred Calvert into the conspiracy, the three defendants (i) participated in a recorded discussion with the undercover agents about how to proceed with the robbery and (ii) had a conversation amongst themselves during which they decided to go ahead with the robbery with only a .25 caliber pistol. Among other things, the defendants discussed and planned every aspect of the planned robbery, including:

- <u>the need to have a crew of individuals ready to execute the robbery</u> (10/4/07 call between Tanner and UC in which Tanner states that he has three other people in his crew that could help with the armed robbery; 10/16/07 meeting between Tanner and the UC during which Tanner stated that he had nothing but killers on his crew; 10/25/07 meeting between defendants and the UC during which defendants discussed that they were ready to proceed with the robbery and how they would come into the house together).

- <u>the need to obtain firearms for the robbery</u> (10/4/07 call between Tanner and UC in which Tanner explains that he has access to two police issued 45 caliber handguns and two Tech-9 handguns for use during the robbery; 10/25/07 meeting between defendants and UC in which Keith Calvert states that they could get more firearms to use during the home invasion, including a "gauge and an SKS," which the UC understood to mean a shotgun and an SKS assault rifle).

- <u>the need to use surprise and, if necessary, violence as part of the robbery</u> (10/16/07 meeting between Tanner and UC in which Tanner explained that the UC did not need to worry about whether Tanner's crew would be ready to pull the trigger if they needed to during the robbery; 10/25/07 meeting between defendants and UC during which Keith Calvert states that he will come in the stash house shooting).

- <u>how to make sure that the UC did not appear to be involved in the robbery</u>. (10/16/07 meeting between Tanner and UC in which they discussed the fact that one of the robbers may have to hit the UC about the head to make it look like he was not involved)

### C.  Defendants Engaged in the Criminal Activity for Profit

Each of the defendants participated in the planned home invasion robbery expecting to obtain a portion of the cocaine for themselves, which they could then could sell for profit. During the October 25, 2007 undercover meeting in particular, the defendants and the UC discussed how they would divide the spoils of the robbery. When Tanner recruited Keith Calvert and Fred Calvert to participate in the armed robbery, he explained that they would have 20 kilograms of cocaine to split between them. In addition, Tanner and Keith Calvert went with the UC to an empty warehouse to see where they were going to leave the UC's portion of the cocaine after the robbery.

6

### D. Defendants Did Not Show a Reluctance to Commit the Offense

Law enforcement recorded multiple meetings with the defendants. At no point in any of those meetings did any of the defendants express any reluctance to commit the planned home invasion robbery for approximately 20 kilograms of cocaine. To the contrary, as explained above in Part II.B, at each of those meetings, the defendants discussed how they would commit the planned home invasion robbery, including discussing various ways to conduct the robbery using firearms and violence.

In addition, during the meetings, the UC asked the defendants whether they had committed this type of crime before and whether they were ready to do what it would take to commit the robbery. In response, the defendants stated various things, including that they had engaged in similar conduct and that they were ready to carry out the home invasion.

Tanner in particular demonstrated on multiple occasions that he was committed to carrying out the armed robbery. For example, during the October 16, 2007 meeting, after one of the people Tanner recruited to help with the robbery stated that he did not want to have anything to do with it, Tanner quickly explained to the UC that he was in "a 150%" and that he would find another person to participate in the robbery, because he was not about to pass about the planned armed robbery. When the replacement that he recruited was arrested by local police, Tanner told the UC that he had already found someone else to help with the robbery and then he recruited two more people to join the conspiracy. If Tanner had any reluctance to participate in the home invasion, he had multiple opportunities to call it off for lack of a crew to help carry it out. Instead, at each turn he took affirmative steps to reassure the UC that he was committed to the robbery and to recruit others to carry out the plan.

### E. The Nature of Law Enforcement's Inducement Does Not Support an Entrapment Defense.

Perhaps even more significantly, it was not law enforcement officers or anyone cooperating with law enforcement that provided the idea of the home invasion robbery to the defendants. To the contrary, it was defendant Tanner who approached the CI and asked the CI if he/she knew of any "licks," meaning any armed robberies, because Tanner needed to make some extra money. Moreover, this was not simply something the CI told law enforcement at the beginning of the investigation. During a recorded meeting with the undercover agents, Tanner repeated that it was he who had approached the CI looking for a lick. As for defendants Keith Calvert and Fred Calvert, it was also Tanner who approached them on the morning of October 25, 2007 and asked them to participate in the armed robbery, not law enforcement agents or the CI. Moreover, the defendants – specifically, Keith Calvert – obtained and brought their own gun to the planned home invasion robbery. Indeed, each of the defendants' action in this case proves that the defendants were the type of persons "who take[] advantage of an ordinary opportunity to commit criminal acts – not an extraordinary opportunity, the sort of thing that might entice an otherwise law-abiding person. . . ." *Evans*, 924 F.2d at 717.

In addition, even if defendants could someone show that law enforcement had provided the inducement, they still would not be able to make out an entrapment defense because another potential co-conspirator had no problem rejecting the proposed plan. During the October 16, 2007 recorded meeting, Tanner introduced an individual named "D" to the UC as someone who could help with the home invasion. After the UC and Tanner explained the plan for the home invasion to "D," he stated without hesitation that he did not want to have any part of the plan and exited the vehicle.

It was that simple. But rather than join "D" in withdrawing from the conspiracy, Tanner did the opposite. He declared his commitment to the scheme and started working on finding a replacement.

**III.    If The Court Allows The Defendants To Proceed With An Entrapment Defense, The Defendants' Prior Drug, Weapons, and Violent Crimes Should Be Admissible.**

A defendant's prior criminal acts are admissible if they "prove predisposition in an entrapment case, because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue." *United States v. Bastanipour*, 41 F.3d 1178, 1183 (7th Cir. 1994); *see also Sorrells v. United States*, 287 U.S. 435, 451 (1932) ("if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue."). Consequently, if the defendants are allowed to proceed with an entrapment defense, the government seeks an *in limine* ruling that Federal Rule of Evidence 404(b) allows the admission of the defendants' convictions discussed above in Part II.A.

## IV. Conclusion

For the foregoing reasons, the government respectfully requests that this Court bar any entrapment defense in the absence of a sufficient pre-trial evidentiary proffer. Alternatively, if the Court allows defendant to argue entrapment, the government asks this Court to find that defendant's prior convictions described above are admissible evidence.

                        Respectfully submitted,

                        PATRICK J. FITZGERALD
                        United States Attorney

                        /s/ Edward N. Siskel
                        EDWARD N. SISKEL
                        TYLER MURRAY
                        Assistant United States Attorneys
                        219 South Dearborn Street, 5th Floor
                        Chicago, Illinois  60604
                        Phone: (312) 353-5300

Dated: March 13, 2008

CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that, in accordance with Federal Rules of Criminal Procedure 49 and 5, and Local Rule 5.5, and the General Order on Electronic Case Filing ("ECF"), the following document:

GOVERNMENT'S MOTION IN LIMINE
TO PRECLUDE AN ENTRAPMENT DEFENSE

was, on March 13, 2008, served pursuant to the district court's ECF system upon the following attorneys listed below and hard copies were hand delivered to the attorneys at the addresses listed below.

To:  Counsel for Rodney Tanner
Ron Clark, Esq.
221 N. La Salle St., Suite 1938
Chicago, IL 60601

Counsel for Keith Calvert
Alison M. Siegler, Esq.
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60604

Counsel for Fred Calvert
Jerry Bischoff, Esq.
35 East Wacker Dr., Suite 650
Chicago, IL 60601

/s/ Edward N. Siskel
EDWARD N. SISKEL
TYLER MURRAY
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
Phone: (312) 353-7602