UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

Apr 4, 2008

APR 0 4 2008

RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 707 |
| vs. | ) | |
| | ) | Judge Ronald A. Guzman |
| KEITH CALVERT | ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant KEITH CALVERT, and his attorney, ALISON SIEGLER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of Title 21, United States Code, Section 846 (Count One); using, carrying, and possessing a firearm during and in relation to a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c) (Count Two); and being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g) (Count Three).

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Two of the indictment.  Count One charges defendant with conspiring with others to possess with intent to distribute in excess of five kilograms of cocaine, in violation of Title 21, United States Code, Section 846.  Count Two charges defendant with using, carrying, and possessing a firearm during and in relation to a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c).

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.    With respect to Count One of the indictment: Defendant admits that on or about October 25, 2007, at North Chicago, in the Northern District of Illinois, Eastern Division, he conspired with co-defendants Rodney Tanner (aka T-Mac) and Fred Calvert knowingly and intentionally to possess with intent to distribute controlled substances, namely, in excess of five kilograms of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of law.

2

More specifically, on or about October 25, 2007, defendant and his brother, Fred Calvert, were approached by Tanner while they were driving down Hervey Avenue in North Chicago in a KIA mini-van. Tanner entered the vehicle and asked defendant and Fred Calvert if they were interested in participating with Tanner in a "lick," meaning an armed robbery, of some drug dealers. Defendant understood from Tanner that the armed robbery was going to be of approximately 20 kilograms of cocaine. Tanner explained that INDIVIDUAL A was planning on doing the armed robbery with him, but that INDIVIDUAL A had been arrested by local police. Defendant and Fred Calvert agreed to go with Tanner to meet his connection to the armed robbery who, unbeknownst to Tanner, defendant or Fred Calvert, was actually an undercover federal agent ("UC1") posing as a disgruntled drug courier. They proceeded in the KIA van to the parking lot of Frank's Lounge, a tavern located at Green Bay Road and 22nd Street in North Chicago, Illinois. Once in the parking lot, defendant, Tanner and Fred Calvert entered an undercover vehicle and met with two undercover federal agents ("UC1" and "UC2"). During the meeting, UC1 explained the basics of the drug trafficking organization that he worked for and the reason behind his desire to rob the cartel. UC1 explained that he was a disgruntled drug courier who needs an outside crew to conduct an armed robbery of kilogram quantities of cocaine from his drug connection. In addition, UC1 stated that he usually sees approximately 20 kilograms of cocaine in the stash house when the UC arrives to pick up his delivery. After hearing this explanation, defendant, Tanner and Fred Calvert all indicated that they were interested in

3

participating in the home invasion. UC1 asked whether they had participated in home invasions in the past and defendant and Fred Calvert both indicated that they had. UC1 stated that if the planned armed robbery was too big a deal for them, they should let UC1 know now. Defendant and Fred Calvert both indicated that they wanted to continue with the planned robbery.

During this same conversation, UC1 inquired whether defendant, Tanner and Fred Calvert had firearms to bring with them to the home invasion. Defendant responded that they had a .25 caliber semi-automatic handgun nearby. When UC1 asked how long it would take them to get the handgun, defendant stated that it was in the KIA Van that he and Fred Calvert had arrived in at the Frank's Lounge parking lot. The UC then explained that he usually sees 2-3 guys in the stash house with handguns and asked what defendant, Tanner and Fred Calvert would do if they had something bigger. Defendant responded that they could get more firearms to use during the home invasion, including a "gauge and an SKS," meaning a shotgun and an SKS assault rifle. UC1 then made arrangements for defendant, Tanner and Fred Calvert to go pick up the additional firearms and then call UC1.

Shortly thereafter, defendant, Tanner and Fred Calvert exited the undercover vehicle. Tanner entered Frank's Lounge while defendant and Fred Calvert entered the KIA mini-van. After a few minutes, defendant and Fred Calvert left the parking lot in the van. Defendant then made a phone call to INDIVIDUAL B, who defendant and Fred Calvert knew to have access to an AK-47 and an SKS assault rifle. Defendant spoke to INDIVIDUAL B over the

4

phone, in the presence of Fred Calvert, and asked INDIVIDUAL B if they could borrow his/her AK-47 and/or SKS assault rifle. INDIVIDUAL B responded that he/she did not have the firearms available on such short notice and did not know anyone else who would.

Defendant and Fred Calvert then returned to the parking lot of Frank's Lounge. Tanner exited Frank's Lounge and entered the van. While in the van, defendant, Tanner and Fred Calvert discussed the fact that they were unable to obtain an AK-47 or SKS assault rifle to use in the armed robbery. Together the defendants agreed to go ahead with the armed robbery using only the .25 caliber hand gun defendant and Fred Calvert had with them in the KIA van. After a few minutes, UC1 received a call from Tanner telling UC1 that Tanner and his guys were ready to go.

Defendant and Tanner then entered the undercover vehicle and met with UC1 and UC2 in the parking lot of Frank's Lounge. During the meeting, UC1 asked Tanner and defendant whether they had the guns, to which defendant responded "Yeah, in the van." UC1 then instructed defendant and Tanner that they would all be proceeding to a staging area where they would wait for the call from UC1's drug connection and where they should leave UC1's share of the kilograms of cocaine after the armed robbery. Defendant and Tanner agreed to accompany UC1 and UC2 to this staging location, but Tanner stated that he wanted Fred Calvert to wait in the van with the guns for further instructions from Tanner. Defendant and Tanner then left the parking lot with UC1 and UC2 while Fred Calvert waited by the van.

b.    With respect to Count Two of the indictment: Defendant admits that on or about October 25, 2007, he and co-defendants Tanner and Fred Calvert did knowingly possess a firearm, namely, a Raven, .25 caliber semi-automatic pistol, Model P-25, bearing serial number 062655, in furtherance of, and carried that firearm during and in relation to, a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, a violation of Title 21, United States Code, Section 846, as further set forth in Count One of the Indictment, in violation of law.

More specifically, on or about October 25, 2007, as part of their plan to participate in an armed robbery of a drug stash house, defendant, Tanner and Fred Calvert decided to bring a Raven, .25 caliber semi-automatic pistol, Model P-25, bearing serial number 062655, with them to assist in committing the robbery. As described above, defendant, Tanner and Fred Calvert discussed with two undercover federal agents the fact that the .25 caliber pistol was in the KIA van that defendant and Fred Calvert were driving that day and available for their use during the planned armed robbery. In addition, defendant, Tanner and Fred Calvert discussed obtaining additional firearms to use during the planned armed robbery. After this discussion, defendant attempted to obtain an AK-47 assault rifle and an SKS assault rifle for use in the armed robbery. Defendant attempted to obtain these firearms by calling individuals who defendant knew to have access to them. Defendant called these individuals in the presence of Fred Calvert. After defendant was unsuccessful

6

in obtaining the additional firearms, he had another discussion with Tanner and Fred Calvert about the fact that they only had the .25 caliber pistol for use during the robbery. During this discussion, defendant, Tanner and Fred Calvert decided to proceed with the armed robbery using only the .25 caliber pistol defendant and Fred Calvert had with them in the KIA van they drove that day.

7.    The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## **Maximum Statutory Penalties**

8.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count One carries a  maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $4,000,000. Defendant further understands that with respect to Count One the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.    Count Two carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 5 years. The sentence of imprisonment on Count

7

Two is required to be consecutive to the sentence on Count One. Pursuant to Title 18, United States Code, Section 3561 defendant may not be sentenced to a term of probation on this count. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release.

      c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

      d.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 15 years' imprisonment. In addition, defendant is subject to a total maximum fine of $4,250,000, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding

8

the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

      b.    **Offense Level Calculations.**

      i.    The base offense level for the charge in Count One of the indictment is 34, pursuant to Guideline § 2D1.1(c)(3).

      ii.    Pursuant to Guidelines §§ 4B1.1(a) and 4B1.1(b), the defendant's base offense level is 37 and his criminal history category is VI because the defendant was at least 18 years old at the time of the offense charged in the indictment, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense, and the statutory maximum for the offense charged in the indictment is life imprisonment.

      iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

      iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the

government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   v. Pursuant to Guideline §2K2.4(b), the Guideline sentence for Count Two of the Indictment is the minimum term of imprisonment required by Title 18, United States Code, Section 924(c), namely 60 months.

   c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 9. Because defendant qualifies as a career offender under § 4B1.1(a), however, his criminal history category is VI:

   i. On or about June 4, 1997, defendant was convicted of possession of a controlled substance in the Circuit Court of Lake County and sentenced to 2 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

   ii. On or about April 27, 1998, defendant was convicted of armed robbery in the Circuit Court of Lake County and sentenced to 5 years' imprisonment.

Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

iii.    On or about October 20, 2000, defendant was convicted of delivery of a controlled substance to a school or public park in the Circuit Court of Lake County and sentenced to 6 years' and 6 months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 34, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 262 to 327 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. The Guideline sentence for Count Two is 60 months, which yields a combined advisory Sentencing Guideline range of 322 to 387 months' imprisonment. Defendant also acknowledges that he is subject to a statutory minimum sentence of 15 years' imprisonment.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.    Accordingly, the validity of this Agreement is not contingent upon the

11

probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f.  Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs b, c, and d of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

    g.  Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

11.    Defendant agrees he will fully and truthfully cooperate with the United States
Attorney for the Northern District of Illinois in any matter in which he is called upon to
cooperate. This cooperation shall include providing complete and truthful information in any
investigation and pre-trial preparation and complete and truthful testimony in any criminal,
civil or administrative proceeding. Only the United States Attorney for the Northern District
of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant
agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing
judge the extent of defendant's cooperation. If the government determines that defendant has
continued to provide full and truthful cooperation as required by this plea agreement, then
the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e),
if applicable, to depart from the applicable Guideline range and statutory minimum sentence,
and to impose the specific sentence agreed to by the parties as outlined below. Defendant
understands that the decision to depart from the applicable guidelines range and statutory
minimum sentence, if it applies, rests solely with the Court.

13.    If the government moves the Court, pursuant to Sentencing Guideline §5K1.1
and 18 U.S.C. § 3553(e), if applicable, to depart from the applicable Guideline range and 18
U.S.C. § 3553(e), if applicable, as set forth in the preceding paragraph, this Agreement will

13

be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guidelines range or the statutory minimum sentence, whichever is greater. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), if applicable, to depart from the applicable Guideline range and mandatory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence, without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty

14

because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

15.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.    The government agrees not to file an information against defendant pursuant to Title 21, United States Code, Section 851 seeking enhancement of defendant's sentence on the basis of a prior conviction for a felony drug offense.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

18.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the

15

Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 707.

22.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

17

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

18

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

b.    **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title

19

28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

25. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.    Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____


_____
PATRICK J. FITZGERALD
United States Attorney

_____
KEITH CALVERT
Defendant


_____
EDWARD SISKEL
Assistant U.S. Attorney

_____
ALISON SIEGLER
Attorney for Defendant


21

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _April 4, 2008_

PATRICK J. FITZGERALD
United States Attorney

KEITH CALVERT
Defendant

EDWARD SISKEL
Assistant U.S. Attorney

ALISON SIEGLER
Attorney for Defendant

21